IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

SAPPHIRA CRAWFORD,

    Plaintiff,
v.                                CASE NO. 1:15-cv-135-MP-GRJ

CAROLYN W. COLVIN,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff appeals to this Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Supplemental Security Income (SSI) pursuant to Title XVI of the Social Security Act (the Act).  ECF No. 1.  The Commissioner has answered, and both parties have filed briefs outlining their respective positions.  ECF Nos. 9, 16, 17.  For the reasons discussed below, the undersigned recommends that the Commissioner's decision be **AFFIRMED**.

## I. PROCEDURAL HISTORY

Plaintiff protectively filed an application for SSI benefits on August 26, 2013, alleging disability beginning February 25, 2011.  R. 28, 268-74.

Her claim was denied initially and upon reconsideration. At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ"), on October 10, 2014, at which Plaintiff and a vocational expert (VE) testified. R. 44-94. The ALJ issued an unfavorable decision on December 17, 2014, and on May 13, 2015, the Appeals Council denied review. R. 4-10, 28-36.

This appeal followed. The sole issue presented is whether substantial evidence supports the ALJ's disability determination, when the ALJ's hypothetical to the VE was defective because it "fail[ed] to include Plaintiff's unreliability" as an employee. ECF No. 16 at 10-13.

## II. STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.[1] Substantial evidence is more than a scintilla, i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.[2]

---

[1] *See* 42 U.S.C. § 405(g) (2000).

[2] Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971)); *accord,* Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision.[3] The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.[4]  However, the district court will reverse the Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.[5]

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death, or has lasted or can be

---

[3] Edwards, 937 F.2d at 584 n.3; Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).

[4] Foote, 67 F.3d at 1560; *accord,* Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding that the court must scrutinize the entire record to determine reasonableness of factual findings); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (finding that the court also must consider evidence detracting from evidence on which the Commissioner relied).

[5] Keeton v. Dep't Health and Human Servs., 21 F.3d 1064, 1066 (11th Cir. 1994).

expected to last for a continuous period of not less than twelve months.[6] The impairment must be severe, making Plaintiff unable to do his previous work, or any other substantial gainful activity which exists in the national economy.[7]

The ALJ must follow five steps in evaluating a claim of disability.[8] First, if a claimant is working at a substantial gainful activity, he is not disabled.[9] Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled.[10] Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled.[11] Fourth, if a claimant's impairments do not prevent him

---

[6] 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505 (2005) (All further references to 20 C.F.R. will be to the 20016 version unless otherwise specified.).

[7] 42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

[8] 20 C.F.R. §§ 404.1520, 416.920. The claimant has the burden of proving the existence of a disability as defined by the Social Security Act. Carnes v. Sullivan, 936 F.2d 1215, 1218 (11th Cir. 1991).

[9] 20 C.F.R. § 404.1520(b).

[10] 20 C.F.R. § 404.1520(c).

[11] 20 C.F.R. § 404.1520(d).

from doing past relevant work, he is not disabled.[12]  Fifth, if a claimant's impairments (considering his residual functional capacity ("RFC"), age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled.[13]

The burden of proof regarding the plaintiff's inability to perform past relevant work initially lies with the plaintiff.[14]  The burden then temporarily shifts to the Commissioner to demonstrate that "other work" which the claimant can perform currently exists in the national economy.[15]  The Commissioner may satisfy this burden by pointing to the Medical-Vocational Guidelines (the "Grids") for a conclusive determination that a

---

[12] 20 C.F.R. § 404.1520(e).

[13] 20 C.F.R. § 404.1520(f).

[14] Walker v. Bowen, 826 F.2d 996, 1002 (11th Cir. 1987); *see also* Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001).

[15] Doughty, 245 F.3d at 1278 n.2. In Doughty the court explained this burden shifting as follows:

> In practice, the burden temporarily shifts at step five to the Commissioner. The Commissioner must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform.  In order to be considered disabled, the claimant must then prove that he is unable to perform the jobs that the Commissioner lists. The temporary shifting of the burden to the Commissioner was initiated by the courts, and is not specifically provided for in the statutes or regulations.) (Internal citations omitted).

claimant is disabled or not disabled.[16]

However, the ALJ should not exclusively rely on the Grids when "the claimant has a non-exertional impairment which significantly limits his or her basic work skills or when the claimant cannot perform a full range of employment at the appropriate level of exertion."[17]  In a situation where both exertional and non-exertional impairments are found, the ALJ is obligated to make specific findings as to whether they preclude a wide range of employment.[18]

The ALJ may use the Grids as a framework to evaluate vocational factors so long as he introduces independent evidence of the existence of jobs in the national economy that the claimant can perform.[19]  Such independent evidence may be introduced by a Vocational Expert's ("VE") testimony, but this is not the exclusive means of introducing such

---

[16] Walker, 826 F.2d at 1002 ("[T]he grids may come into play once the burden has shifted to the Commissioner to show that the claimant can perform other work.").

[17] Wolfe v. Chater, 86 F.3d 1072, 1077 (11th Cir. 1996). *See* Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Walker, 826 F.2d at 1003 ("The grids may be used only when each variable on the appropriate grid accurately describes the claimant's situation.").

[18] Walker, 826 F.2d at 1003.

[19] Wolfe, 86 F.3d at 1077-78.

evidence.[20]  Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he or she is not capable of performing the "other work" as set forth by the Commissioner.

### III.  SUMMARY OF THE RECORD

#### *A. Findings of the ALJ*

The ALJ determined that Plaintiff has the severe impairments of history of bipolar disorder with depression and a history of polysubstance abuse.  Plaintiff does not have an impairment or combination of impairments that meets or equals the listings.  In assessing the severity of Plaintiff's mental impairments, the ALJ considered the "paragraph B" criteria and found that Plaintiff has mild restriction in activities of daily living, moderate difficulties in social function, moderate difficulties in concentration, persistence, or pace, and no episodes of decompensation.  The ALJ found that the "paragraph C" criteria were not satisfied.  Based on the degree of limitation found in the "paragraph B" mental function analysis, the ALJ determined that Plaintiff has the RFC to perform a full range of work at all exertional levels, with the following nonexertional

---

[20] *See id.*

limitations: simple, rote, and repetitive tasks in a work environment that does not change materially from one day to the next; no interaction with the general public and can only interact with co-workers and supervisors no more than occasionally; no work which involves meeting strict production goals or quotas; working with things rather than people and not in proximity to groups of more than 10 to 20 people; and Plaintiff would work better in a solitary work position.  Relying on the testimony of a VE, the ALJ found that a person with Plaintiff's age, education, work experience, and RFC, would be able to perform various unskilled jobs that exist in substantial numbers in the national economy, such as: sweeper/cleaner, industrial; cleaner, wall; waxer, floor; cleaner, housekeeping; and marker.  The ALJ therefore found that Plaintiff was not disabled.  R. 30-36.

### B.  *Medical Evidence* [21]

Plaintiff's records reflect treatment for long-term substance abuse-related issues and treatment for an underlying affective disorder.  Meridian Behavioral Healthcare records from June 2013 reflect diagnoses of

---

[21] Plaintiff neither summarizes the medical evidence nor points to specific evidence that supports her claim.  The Court's summary of the evidence is limited to the evidence of Plaintiff's mental impairment as summarized by the ALJ because the accuracy of that summary is undisputed.

cocaine and marijuana dependence.  Plaintiff left an inpatient treatment program against medical advice after 10 days.  Exh. B1F at 27-29.

Alachua County Jail records in June 2013 reflect that Plaintiff had full work clearance, though some suicidal ideation is indicated after being off of medication for two weeks.  Exh. B2F at 3, 68.

State agency consultants reviewed Plaintiff's medical records in October and December 2013, and concluded that Plaintiff was capable of performing simple unskilled repetitive assignments and tasks.  Exh. B4A, B6A.

Plaintiff was voluntarily admitted to Meridian for treatment in December 2013 due to mood swings, paranoid thoughts, auditory hallucinations, and thoughts of hurting herself and others.  She had been off her medications for five months.  Exh. B6F, 50-51.  In January 2014, she indicated that medication managed her symptoms but she was not taking them due to costs.  Exh. B6F, 1-2.  In March 2014, her mental status examination was fairly normal.  Exh. B6F, 39-40.  In July 2014, Plaintiff was admitted pursuant to the Baker Act.  In August 2014, mild improvement in symptoms was noted and she was described as being

lucid, calm, and ready to be successful with having her own room at the Joyce House. Exh. B6F, 28-29, 44.

At the time of the hearing, Plaintiff continued to receive treatment at Meridian and lived in a group home. The ALJ also reviewed Plaintiff's school records, which did not suggest an inability to perform unskilled tasks. Exh. B8F.

### C. *Hearing Testimony*

Plaintiff was 38 years old at the time of the hearing. She attended school through eighth grade. Plaintiff testified that she last worked in 2009, as a waitress. Her mental problems, such as hearing voices, kept her from maintaining the job. Plaintiff testified that she takes Paxil and Seroquel, although she sometimes cannot get Paxil due to the cost. She has taken Paxil since having her first child at age 16. Her depression returns when she cannot get Paxil. Plaintiff was in jail for three months and received a sentence of probation for stabbing someone when she was off of her medication. While in jail, she received her medication and she felt better. Meridian got her out, and Plaintiff continued treatment. Plaintiff lives in a group home and sees her therapist. She testified that she has

been "faithful" with her medication. Plaintiff testified that even when she takes her medication she feels okay but she still needs to be away from people and feels like she can't function. Plaintiff's responsibilities in the group home include keeping her room and the dining area clean. She prepares her own meals and goes grocery shopping with other residents. R. 45-73.

On examination by her counsel, Plaintiff testified that her medication makes her sleepy. She testified that she has mood swings and becomes angry and aggressive. Plaintiff relies on the group home manager to help ensure she takes her medication. She hears voices about twice a week. She has difficulty concentrating and focusing on things. She testified that she can't stay on a job because of the voices and because of being around people. R. 73-81.

The ALJ posed a hypothetical to the VE that assumed a younger person, 38 years of age, with limited education, no past relevant work experience, no physical limitations, but with nonexertional limitations of simple, rote, repetitive tasks, a work environment that does not change from day to day, no interaction with the general public, no more than

occasional interaction with co-workers and supervisor, no strict production goal or quota, would work better with things than people, no large groups of people, and better in a solitary position.  The VE testified that there would be work available at the medium exertional level such as industrial sweeper, wall cleaner, and floor waxer.  Jobs at the light exertional level included housekeeping/cleaner and marker.  R. 83-88.

Plaintiff's counsel asked the VE whether the jobs would change if the person had no ability to work with someone, and the VE responded no because the listed jobs were performed independently.  The jobs would require limited contact with a supervisor.  If the person was off task more than 15 percent of the day, that would preclude employment.  R. 89-93.

## IV. <u>DISCUSSION</u>

Plaintiff contends that substantial evidence does not support the ALJ's "implicit finding" that not only can Plaintiff work full-time, she is "also capable of reliably attending work."  Plaintiff asserts that "[n]owhere in his decision does the ALJ address reliability.  Thus, axiomatically, [the ALJ's] hypothetical questions to the [VE] are defective," requiring remand.  ECF

No. 13 at 13.[22]

Generally, when posing a hypothetical to a VE the ALJ is required to describe Plaintiff's educational level, age, work skills, experience, and all of Plaintiff's impairments included in the RFC.[23] The Social Security Administration's regulations do not obligate an ALJ to use specific wording when describing Plaintiff's impairments in these hypotheticals so long as the question accurately reflects the claimant's RFC. In order for a response to a hypothetical question to constitute substantial evidence of work available to the claimant (at step five), the question must set out all of the claimant's impairments.[24] However, in posing a hypothetical question, the ALJ is not required to include findings the ALJ properly rejects, nor must he accept the VE's responses to hypothetical questions that include unsupported allegations.[25]

---

[22] The first part of Plaintiff's argument states: "In the long whether the defendant Commissioner may determine that plaintiff Crawford is not disabled because her substance abuse issues or material factors disability. But that issue is not currently before the court." ECF No. 16 at 13. The Court cannot ascertain the meaning of this "issue," but will not address it inasmuch as Plaintiff concedes it is not currently before the Court.

[23] Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).

[24] Wilson v. Barnhart, 284 F3d.1219, 1227 (11th Cir. 2002).

[25] Wright v. Comm'r of Soc. Sec., 327 F. App'x 135, 137 (11th Cir. 2009).

If an ALJ determines a claimant has *moderate* difficulties in concentration, persistence or pace, then the ALJ's hypothetical to a VE must account for those difficulties. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180-81. The ALJ need not include, however, such limitations explicitly in the hypothetical.[26] Instead, "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations" in concentration, persistence or pace when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work" despite those limitations.[27] Hypotheticals also "adequately account for a claimant's limitations in concentration, persistence, and pace when the questions otherwise explicitly account for these limitations."[28]

The ALJ's RFC determination and hypothetical to the VE properly accounted for Plaintiff's moderate impairments in concentration, persistence, and pace, by limiting Plaintiff to only unskilled work. R. 85; *see Winschel*, 631 F.3d at 1180. Further, the ALJ's RFC and hypothetical properly accounted for Plaintiff's moderate limitations in social functioning

---

[26] Id. at 1180.

[27] Id.

[28] Id.

by restricting her to jobs that could be performed independently, with no contact with the general public, no more than occasional contact with co-workers and supervisor, no work in proximity to large groups, and preferably working with things rather than people.  R. 85-86.  The ALJ's findings are supported by the medical evidence and by the conclusions of the state agency consultants, who reviewed the medical records and determined that Plaintiff was capable of performing unskilled work.  *See* R. 33.

Further support for the ALJ's implicit finding that greater limitations were not warranted is found in Plaintiff's most recent treatment notes from Meridian.  A Meridian treatment plan dated February 2014 reflected a plan for transition to "community, living in her own home, self sufficient, happy and employed."  Her "strengths" were described as including "a mother to 17 year old son, resourceful and articulate."  R. 650.  In an October 2014 treatment plan update, Plaintiff was meeting her goal of stable maintenance of her chronic condition, and expressed a goal to "be well, manage anxiety and depression, be able to get my medication on time, have income, and feel good about myself."  R. 653-58.   Meridian notes

dated in November 2014 reflect that her thought processes were goal directed and logical, she had a moderately depressed and moderately anxious mood, her affect was broad and within normal limits, her behavior was cooperative and within normal limits, she was oriented in all four spheres, memory was grossly intact, she appeared to function in the average or above average range, and she had the ability to appreciate the implications of her symptoms and was capable of making appropriate decisions regarding safety and care.  With regard to "future oriented," the notes reflect that Plaintiff was interested in day to day activities and events, she finds pleasure in daily life, and she reported feeling hopeful about the future.  The provider assessed that Plaintiff was maintaining a stable level of functioning, with no evidence of thought disorder or display of emotional dyscontrol.  R. 647-49.

Plaintiff points to nothing in the record that would support a conclusion that the hypothetical posed to the VE should have included a further limitation based on Plaintiff's asserted lack of "reliability."  To the extent that counsel inquired of the VE as to the availability of jobs for someone who was off-task more than 15 percent of the workday, Plaintiff

again points to nothing in the record that supports a finding that Plaintiff was so limited and therefore there was no basis for the ALJ to include such a limitation in the hypothetical.

In sum, on this record the Court finds that substantial evidence supports the ALJ's RFC determination regarding Plaintiff's functional limitations, and that such limitations were properly incorporated into the hypothetical posed to the VE.

## V.  RECOMMENDATION

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of the Commissioner should be **AFFIRMED**.

**DONE AND ORDERED** this 9th day of September 2016.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections

**shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.** *See* **11th Cir. Rule 3-1; 28 U.S.C. § 636.**